IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHAWN FRYE, <br><br>     Plaintiff, <br><br> v. <br><br> JOHN M. BARWICK, III, <br> WILLIAMS, <br> BRAWNMEIRE, <br> JANE DOE ADA COORDINATOR, <br> CHRISTINE BROWN, <br> C/O AGNEW, <br> C/O BRITTON, <br> C/O DICKERSON, <br> C/O HUNGATE, <br> LT. JOHNSON, <br> LT. CORBETT, <br> LT. LITTLE, <br> SGT. WALKER, <br> C/O SHIREY, <br> C/O MADDOX, <br> LT. RANSON, <br> J. SADDLER, <br> M. LIVELY, and <br> JANE DOES (NURSES), <br><br>     Defendants. | Case No. 25-cv-01134-SPM |

## MEMORANDUM AND ORDER

    Plaintiff Shawn Frye, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pinckneyville Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. Plaintiff is seeking monetary damages. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a

complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. See 28 U.S.C. § 1915A(b).

## THE COMPLAINT

Plaintiff alleges the following: Since his arrival at Pinckneyville Correctional Center (Pinckneyville), on or about June 20, 2024, he has been forced to endure inhumane conditions of confinement, specifically an unsafe environment due to the current drug crisis. (Doc. 1, p. 7, 14). Inmates at Pinckneyville are smoking a paper drug substance that is sprayed and laced with narcotics such as PCP, fentanyl, ketamine, CBD oil, wasp spray, and other harmful intoxicants. Inmates are smoking not only in their cells, but also during dayroom recreation time. (*Id.* at p. 8). Plaintiff states that breathing in the poisonous secondhand smoke is inescapable. (*Id.* at p. 10). Not only do his cellmates smoke, but the smoke comes inside his cell through the vents and door window. (*Id.*).

Ingesting the paper drug substance causes inmates to act in erratic ways. (Doc. 1, p. 7). After smoking the substance some individuals nod off to sleep, while others become erratic, aggressive, angry, or hallucinate. (*Id.* at p. 7, 10). Plaintiff has been attacked and assaulted by his cellmates after they ingested the drugs. (*Id.*). Plaintiff claims that the paper drug substance is entering the facility through the mail and is also brought in by staff. (*Id.* at p. 7). At least three inmates have overdosed and died after smoking the substance. (*Id.* at p. 8).

Breathing in the secondhand smoke from the paper drug substance, which is vastly different from cigarette smoke, is aggravating Plaintiff's asthma and seizure disorder and causing other health issues. (Doc. 1, p. 7, 8). Prior to his arrival at Pinckneyville, his asthma was under control, and now, he must use two different types of inhalers to treat his asthma. (*Id.* at p. 8). The secondhand smoke has on multiple occasions caused Plaintiff to vomit, pass out, and have asthma attacks and seizures in his cell. (*Id.* at p. 9). During his asthma attacks and/or seizures, Plaintiff would attempt to alert staff for medical help by pressing the panic button located in his cell, but staff would ignore the panic button signal. When Plaintiff was housed in Housing Unit 5, his cell did not have a panic button, so there was no way to alert staff of his medical emergencies. (*Id.*). After he arrived at Pinckneyville, Plaintiff wrote many grievances and request slips and spoke personally to staff about the extreme amounts of secondhand smoke to which he was being subjected, and he repeatedly requested medical attention and to be celled in an area with less smoke. (*Id.* at p. 10-11).

Specifically, on August 16, 2024, Plaintiff wrote requests slips to Jane Doe ADA Coordinator and Christin Brown, the head of the health care unit, explaining that he was vomiting, feeling lightheaded and dizzy, and experiencing an increase in seizures due to inhaling the secondhand smoke. On September 15, 2024, and then again on October 5, 2025, Plaintiff submitted to Warden John M. Barwick III request slips. (Doc. 1, p. 11). In these request slips, Plaintiff explained the conditions that he was enduring, but he never received a response. (*Id.*).

While celled in cell 5B55 from October 25, 2024, through November 27, 2025, Plaintiff suffered from several asthma attacks and seizures. (Doc. 1, p. 11). During these medical episodes, Plaintiff's cellmate would attempt to alert officers to obtain medical attention for Plaintiff, since the cell did not have a panic button, but no officer responded. (*Id.* at p. 11-12). Plaintiff verbally told Correctional Officers Brawnmeire, Martin,[1] Williams, and Britton, Sergeant Agnew, and Lieutenants Ransom and Little that he has asthma, was struggling to breath, and needed immediate medical attention. (*Id.* at p. 12). Plaintiff asked Lieutenants Ransom and Little to be moved to a cell with a panic button and a nonsmoking cellmate or to the healthcare unit. The officers either refused Plaintiff's requests or instructed Plaintiff to submit a sick call slip or grievance. (*Id.*).

On October 25, 2024, when Plaintiff was moved to cell 5B55, Plaintiff spoke to Correctional Officers Brawmmeire and Williams about his bunkbed situation. (Doc. 1, p. 15). He told the officers that he suffered from a seizure disorder and so had a bottom bunk permit but that the cellmate who was already in cell 5B55 when Plaintiff was reassigned refused to give Plaintiff the bottom bunkbed. Plaintiff asked to be moved to another cell with an open bottom bunkbed. The officers told Plaintiff, "No, figure it out with your cellmate." (*Id.*). Plaintiff also wrote requests slips to Correctional Officers Brawnmeire and Williams and Lieutenants Ransom and Little explaining that he had a bottom bunk bed permit that was not being honored. (*Id.* at p. 13).

---

[1] Martin is not listed as a party in the case caption, and so he will not be treated as a defendant in this lawsuit. *See Myles v. United States,* 416 F.3d 551, 551–52 (7th Cir. 2005).

On November 29, November 30, December 1, December 2, and December 3, 2024, Plaintiff had seizures and fell from his top bunkbed, injuring his head, back, neck, and shoulder. (Doc. 1, p. 13, 15). On December 4 and 5, 2024, Plaintiff wrote requests to multiple staff members, including the Warden Barwick, Jane Doe ADA Coordinator, Christine Brown, Williams, Brawnmeire, Little, Ransom, Shirey, and Britton about his seizures and bottom bunk permit and received no response. (*Id.* at p. 13, 14, 15 -16).

On December 20, 2024, Plaintiff told Correctional Officer Britton that he could not breath and was experiencing sleeplessness, burning lungs, headaches, blurred vision, vomiting, chest pain, and coughs due to inhaling secondhand smoke. (Doc. 1, p. 16). Plaintiff said he needed immediate medical attention and asked Britton to call a nurse. Britton said, "Okay," but a nurse never came. (*Id.*).

On January 16, 2025, Plaintiff told Correctional Officer Dickerson that he needed immediate medical attention because he was having difficulties breathing and thought he was going to "pass out." (Doc. 1, p. 16). Dickerson told Plaintiff, "I'm not calling a code 3 so put in a sick call." Plaintiff explained that he has asthma, and Dickerson repeated for Plaintiff to submit a sick call slip. (*Id.*).

On March 4, 2025, Plaintiff wrote Correctional Officer Agnew a request slip informing Agnew that he needed immediate medical attention because he could not breath and had extreme chest pain and tightness. (Doc. 1, p. 11). Agnew did not respond. (*Id.*). On March 6, 2025, Plaintiff spoke to Agnew about his medical issues, and Agnew told Plaintiff to submit a sick call slip. (*Id.* at p. 16-17).

**PRELIMINARY DISMISSAL**

The only factual assertion Plaintiff makes against Correctional Officers Hungate and Walker and Lieutenant Johnson is that they told him that "many people have died from this paper drug substance," (Doc. 1, p. 8). This conduct, as pled, does not violate the Constitution. Thus, there are no viable claims against Hungate, Walker, and Johnson, and they will be dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

Plaintiff states that Grievance Officers Saddler and Lively are "accountable" because they reviewed and denied his grievances, but the mishandling or denial of a grievance does not amount to a constitutional violation. *See George v. Smith*, 507 F.3d 605 (7th Cir. 2007). ("Prison officials who rejected prisoner's administrative complaints alleging constitutional violations were not themselves subject to liability on theory that the officials caused or contributed to the alleged underlying violations."). Any intended claims against Saddler and Lively must therefore be dismissed without prejudice.

The Court also dismisses all claims against Jane Doe Nurses in the healthcare unit. Plaintiff asserts that on multiple occasions he told "them" that he has seizures and was suffering from other physical ailments caused by secondhand smoke inhalation, but "they delayed for months in allowing [him] to see a physician assistant." (Doc. 1, p. 18). While Plaintiff may use "John Doe" or "Jane Doe" to refer to a party whose name is unknown, he must still follow Federal Rule of Civil Procedure 8 pleading standards and include a short, plain statement of the case

against each individual. *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (finding the phrase "one or more of the Defendants" did not adequately connect specific defendants to illegal acts, and thus failed to adequately plead personal involvement). Because the Complaint does not describe individual conduct on the part of any of the Jane Doe Nurses, the claims against them are dismissed.

## DISCUSSION

Based on the allegations of the Complaint, the Court finds it convenient to designate the following counts:

**Count 1**: Eighth Amendment deliberate indifference claim against Barwick, Williams, Brawnmeire, Jane Doe, Brown, Agnew, Britton, Little, Ransom, and Dickerson for failing to ensure that Plaintiff received medical attention for his medical symptoms induced, aggravated, or caused by secondhand smoke inhalation.

**Count 2:** Eighth Amendment deliberate indifference claim against Barwick, Williams, Brawnmeire, Jane Doe, Brown, Britton, Little, Ransom, and Shirey for failing to honor Plaintiff's low bunk permit and house him in a cell with an available low bunkbed.

**Count 3**: Eighth Amendment deliberate indifference claim against Barwick, Williams, Brawnmeire, Agnew, Britton, Little, and Ransom for housing Plaintiff in conditions that exposed him to extreme levels of secondhand smoke from unknown toxic substances.

**Count 4:** Eighth Amendment deliberate indifference claim against Williams, Brawnmeire, Little, Ransom, Shirey, Maddox, and Corbett for housing Plaintiff in a cell without a panic button.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order**

**should be considered dismissed without prejudice as inadequately pled under the *Twombly*[2] pleading standard.**

### COUNT 1

Plaintiff asserts that he repeatedly sought medical treatment for his various health conditions induced, aggravated, and/or caused by inhaling the secondhand smoke of illicit substances but that his requests for medical treatment were ignored or denied. These allegations are sufficient for Count 1 to proceed against Barwick, Williams, Brawnmeire, Jane Doe, Brown, Agnew, Britton, Little, Ransom, and Dickerson.

### COUNT 2

"Prison officials may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

Plaintiff claims that he alerted Barwick, Williams, Brawnmeire, Jane Doe ADA Coordinator, Brown, Britton, Little, Ransom, and Shirey that his low bunk permit was not being honored and that he was at risk of falling due to his health conditions, and in fact, did fall several times from his bunk. These Defendants, however, did nothing to ensure that he was celled in a cell with an available low bunk bed. Count 2 survives preliminary review.

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## COUNT 3

While the Eighth Amendment does not guarantee smoke free prisons, under existing precedent it is feasible that an inmate could state a deliberate indifference claim related to smoke exposure if he can demonstrate that officials intentionally disregarded a risk to his health and safety. *See e.g., Tellez v. Uchtman*, 2010 WL 746991 at *3-4 (S.D. Ill. March 1, 2010) (collecting cases on secondhand smoke exposure and serious medical conditions); *Powers v. Snyder*, 484 F.3d 929, 933 (7th Cir. 2007) (a prison is not required to provide a completely smoke-free environment unless smoke exposure exacerbates a medical condition). Here, Plaintiff has identified serious medical conditions that have been exacerbated by smoke exposure. The Seventh Circuit has found that symptoms induced by secondhand smoke such as "breathing problems, chest pains, dizziness, sinus problems, headaches and a loss of energy- are, objectively speaking relatively minor," *Henderson*, 196 F. 3d at 846, but Plaintiff complains of more than discomfort and slight ailments. He asserts increased vomiting, passing out, seizures, and asthma attacks. These symptoms, as pled, are objectively serious health problems.

Further, Plaintiff claims that he notified Barwick, Brawnmeire, Williams, Agnew, Britton, Ransom, and Little that the secondhand smoke was negatively impacting his health and requested to be moved to an environment with less smoke, such as a single cell, the healthcare unit, or a cell with a non-smoking cellmate. His requests were denied or ignored. Plaintiff also asserts that it was well known throughout Pinckneyville that large quantities of illicit drugs were being smuggled

into the facility, smoked by inmates, and causing a "crisis." (Doc. 1, p. 8). These allegations are sufficient for Count 3 to proceed against Barwick, Brawnmeire, Williams, Agnew, Britton, Ransom, and Little.

## COUNT 4

Plaintiff claims that while he was housed in Housing Unit 5, his cell did not have a panic button. (Doc. 1, p. 9, 12). He asked Shirey, Williams, Brawnmeire, Maddox, Ransom, Corbett, and Little to be placed in a cell with a panic button so that he could immediately contact staff in the event he had a seizure or breathing issues, and they declined or ignored his request. (*Id.* at p. 9, 12, 13). Defendants knew of the health and safety risk Plaintiff would face by placing him in a cell without a panic button, but they did not reassign him to a different cell. Count 4 will proceed against Shirey, Williams, Brawnmeire, Maddox, Ransom, Corbett, and Little.

## DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed against Barwick, Williams, Brawnmeire, Jane Doe, Brown, Agnew, Britton, Little, Ransom, and Dickerson. **COUNT 2** will proceed against Barwick, Williams, Brawnmeire, Jane Doe, Brown, Britton, Little, Ransom, and Shirey. **COUNT 3** will proceed against Barwick, Williams, Brawnmeire, Agnew, Britton, Little, and Ransom. **COUNT 4** will proceed against Williams, Brawnmeire, Little, Ransome, Shirey, Maddox, and Corbett. Because there are no surviving claims against Hungate, Johnson, Walker, Saddler,

Lively, and Jane Does Nurses, they are dismissed from this case. The Clerk of Court is **DIRECTED** to terminate them as a party on this docket.

Because Plaintiff's claims involve his medical care, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court shall prepare for Barwick, Williams, Brawnmeire, Jane Doe (once identified), Brown, Agnew, Britton, Dickerson, Corbett, Little, Shirey, Maddox, and Ransom the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Plaintiff and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in a dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  July 17, 2025**

   *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.